No. 2078

Second Circuit Appeal

---

OSCAR PICKELS v. L. B. BURNAMAN

(June 23, 1925, Opinion and Decree.)
(July 11, 1925, Rehearing Refused)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Evidence—Par. 58.**
The burden of proof is on the defendant to prove an agreement ·to discontinue the plaintiff's salary where the plaintiff has alleged and proven a prior agreement by· which he was paid a salary for his work.

2. **Louisiana Digest—Evidence—Par. 59.**
The burden of proof is on the plaintiff who alleges that he was to receive in addition to a salary ·a bonus per bale on all cotton produced.

3. **Louisiana Digest—Appeal—Par. 625.**
The finding of· the District Judge as to the non-existence of a contract, being clearly correct, is affirmed.

Appeal from the Thirteenth Judicial District, Parish of Rapides. Hon. L. L. Hooe, Judge.

This is a suit to collect a salary as overseer and an alleged bonus on the number of bales of cotton produced.

There was judgment in part for plaintiff, and plaintiff appealed.

Judgment affirmed.

Gus A. Voltz, of Alexandria, attorney for plaintiff, appellee.

Hakenyos, Hunter & Scott, of Alexandria, attorneys for defendant, appellant.

ODOM, J. Plaintiff sued defendant for $1,290.00, which he claims for two months

salary at $75.00 per month, balance due him for the year 1922 as overseer, for $25.00 bonus on twenty-five bales of cotton produced in 1922, and for salary at $75.00 per month for the entire year 1923, and for a bonus on cotton which he alleges will be produced during the year 1923.

He alleges that he worked for defendant as overseer on his plantation during the whole of the year 1922 at $75.00 per month and that defendant paid him his salary, except for the months of September and December of that year; that he was to receive as a bonus $5.00 per bale for all cotton produced that year and that there were twenty-five bales of cotton produced.

He alleges that during the months of November and December, 1922, defendant discussed with him plans for farming for the year 1923 telling him what he would plant and showed petitioner some timber that he wanted removed from the land in 1923 and that defendant told him that he wanted petitioner to remain with him as overseer for the year 1923 and that he agreed to do so.

And he further alleges that in the early part of January, 1923, defendant took petitioner into the field and pointed out to him the places where he wanted certain crops planted in that year, and that pursuant to said contract he began to work as overseer on January 1, 1922, and continued to work as such overseer until January 24, 1923, when he was discharged without cause. He now claims salary for the entire year 1923.

In the lower court there was judgment for plaintiff for salary for two months in 1922 and for twenty-three days in 1923. Defendant has appealed. Plaintiff has answered the appeal and asked that the judgment be amended.

### OPINION.

Plaintiff went to work as overseer for defendant on January 1, 1922, at a salary of $75 per month. He was paid for all that year, except the months of September and December, and in the early part of January, 1923, defendant sent him a check for $75 covering his salary for the month of December. It seems that this check carried a notation written on its face that it was in full for all amounts due plaintiff for the year 1922. Plaintiff did not cash the check, for the reason that he was claiming salary for the month of September and also claiming a certain amount due as a bonus on cotton for the year 1922. Plaintiff it seems had the check at the time of the trial of this case.

Defendant admits that he did not pay plaintiff his salary for the month of September, 1922, but he says that plaintiff was sick and did not work and that it was agreed that he should not be paid for that month as the plaintiff was carrying indemnity insurance which he desired to collect.

Plaintiff says that he was sick some in the month of September, sick "off and on about twenty or thirty days. I wasn't in the bed all the time but was up and down".

He swore positively that there was no agreement between him and defendant that his salary for September should not be paid.

Defendant testified as follows:

Plaintiff was not sick all the time during September.

"He had been sick for three weeks and would come poking out once in a while and my wife would get after him about it and he said 'well,' I am carrying sick benefits of $90 per month and that's more than $75; and he said I want to make the agreement with you all that I will be out and in when I can be,—I will be off the pay roll for this month, so that I can get my sick benefits'."

As stated, plaintiff admits that he was sick some but denies that he was sick for a month and especially denies that he agreed that he should be dropped from the pay roll for the month of September.

It does not appear that it was customary for an overseer's salary to be cut off during a short spell of sickness. In fact it. appears that the custom was that his salary should continue.

The burden was on defendant to prove the agreement to discontinue plaintiff's salary, and inasmuch as his testimony on that point is not corroborated and plaintiff swears positively that there was no such agreement. We must hold that ` plaintiff is entitled to his salary for the month of September.

On the question of the bonus on cotton for the year 1922, plaintiff swears that he was to receive $5 per bale on all cotton produced. He is not corroborated on this point. Defendant swears that plaintiff was to receive $5 per bale on all cotton grown in excess of 60 bales and that there were less than 60 bales produced.

The burden was on plaintiff to make out his case on this point by a preponderance of the testimony. He has failed to do so, and his demand was properly rejected by the lower court.

We think plaintiff has failed to make out his case for salary for the year 1923, except for· the ·first twenty-three days in January.

Plaintiff as a witness in his own hehalf admits that he had no formal, definite contract with defendant to remain with him for the year 1923, but he says that it was the custom in that vicinity for the plantation owner to notify the overseer by December first 'if he did not desire the overseer's services for the following year, and that if the overseer did not receive such notice prior to that time it was understood that he should continue for another year.

He says that he received no such notice from' defendant but, on the contrary, defendant instructed him what to do for the following year; took him· out on the plantation and told ·him what crops to plant and where to plant them, gave him instructions with reference to the removing of certain timber in the year 1923, and, in fact, led plaintiff to believe that he was to remain as overseer for the entire year 1923.

On this point defendant swears positively that he notified plaintiff in November, 1922, that his services were not wanted for 1923.

He says he notified him again in December 9th and again in January, 1923, when he had his neice to write plaintiff a letter asking for the residence that he was then occupying.

Defendant swears that while he did give. plaintiff certain instructions in December, 1922, and in January, 1923, these instructions were not given in contemplation of plaintiff's remaining as overseer for the year 1923.

He explains that plaintiff's time did not expire until December 31, 1922, and that he gave instructions from day to day as to what plaintiff should do, and that plaintiff had no where to go after his time expired on December 31, 1922, and requested that he be allowed to remain in' the house until he could get a place to go and stated that for the use of the house he would help in the management of the place, which accounts, he says, for the fact that plaintiff did some work in January, 1923, under his instructions.

Plaintiff called as a witness William Waldron who testified that in the month of December, 1922, defendant told him that plaintiff would remain with him for the year 1923.

Defendant denies this, but says that he had some conversation with Waldron in September in which he probably told him that plaintiff would stay. ·

Plaintiff introduced a letter dated January 23, 1923, signed· by defendant, addressed to plaintiff, in which it was stated

that inasmuch as plaintiff's services had been unsatisfactory for the last fifteen or twenty days and that inasmuch as plaintiff had been consulting attorneys with a view of suing defendant, plaintiff was asked to send in his resignation at once.

Defendant, in explanation of this letter, says that he did not write it but that it was written by his neice; that he told her to write plaintiff that he wanted his residence; that. plaintiff had already been discharged and was permitted to remain in the house until he could get another; and that inasmuch as plaintiff had consulted lawyers with reference to a suit against him on account of the amount which he claimed for the year 1922, he thought plaintiff was no longer entitled to remain in the house, and therefore he had this letter written asking him for the house.

The young lady who wrote the letter says that her uncle did not tell her to write for plaintiff's resignation but to request that he give up the residence and that he wanted to be courteous and polite and did not want to tell him to get out and that she thought it proper to write as she did.

To corroborate his testimony that he had notified plaintiff that he did not desire his services for 1923, he called a colored man named John Williams who was employed to feed the stock on his plantation in the year 1922.

Williams testified that defendant told him in December to quit feeding plaintiff's horse. He says he did quit feeding the horse but that the horse was about to starve to death and he fed him some after that to keep him alive.

Defendant also called as a witness his nephew, Graham Kelsoe, who says that he was talking to Pickels, the plaintiff, about January 8, 1923, and that he asked Pickles what he was going to do and that Pickles said:

"I don't know, we haven't made any deal for this year."

And further says that Pickels said he did not know what he was going to do during the year 1923 and that defendant had not settled with him for the past year.

This witness said that defendant told him in the fall of 1922 that he did not expect to keep · plaintiff.

He says he heard the conversation between plaintiff and defendant on January 24, 1923, and that defendant told plaintiff on that occasion that he had told him, plaintiff, in September that he did not need him for the year 1923, and asked him for the keys and that Pickels did not want to give them up without a receipt but that there were others present and that finally Pickels handed defendant the keys and said: "You all see I have given up the keys", and further remarked "I suppose I am fired" and that defendant said "You have been fired since along in December, I told you I didn't need you any longer".

The District Judge held that there was no contract for the year 1923. However, he allowed plaintiff his salary until he quit work in January under his alternative plea set out in paragraph twenty of his petition.

As pointed out, the testimony is conflicting.

The District Judge is no doubt personally acquainted with the witnesses. He saw them and heard them testify. We cannot say that he has manifestly erred in his judgment.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.

---

ON APPLICATION FOR REHEARING.

REYNOLDS, J.   Defendant, appellant, asks for a rehearing herein on the ground that · the court failed to give proper

weight to the check for $109.50 in evidence, marked defendant's exhibit 9, which was cashed by plaintiff and on the margin of which was written:

"Settlement in full to Dec. 1."

This check and notation were considered by us before rendering our original opinion herein, but we did not think it of sufficient weight to overcome the finding of the trial judge, who saw and heard the witnesses testify in favor of the plaintiff on that point.

It is not contended that plaintiff's salary for the month of September was paid but defendant, both in his answer and his testimony, admits that it was not paid.

Defendant's contention that plaintiff remitted his claim for salary for the month of September could not only be sustained by clear proof showing that plaintiff understood and intended to remit his claim for salary for that month.

Defendant further insists that a rehearing should be granted on the ground that plaintiff still holds his check for $75.00 for plaintiff's salary for the month of December and that our judgment should direct cancellation or return of this check before defendant should be required to discharge this part of the judgment.

As we interpret the judgment, defendant is fully protected and could only be required to pay the amount of the judgment, less the amount of the check or to pay the amount of the judgment only after cancellation and surrender of the $75.00 check.

There is no reason, however, why the judgment should not be made more explicit on this point, but the doing of this does not, we think, constitute a change or modification of the judgment such as would cast the plaintiff, appellee for the costs of the appeal, and this modification can be made without granting a rehearing.

Our original decree herein is recast by adding thereto the following provision:

This judgment is subject to a credit of seventy-five dollars for defendant's outstanding check in favor of plaintiff for that amount for plaintiff's salary for the month of December; or said check must be returned to defendant before execution of this judgment. And as thus recast our judgment herein shall remain as originally rendered. Costs to be paid as provided in our original judgment herein. And subject to this modification or explanation of the judgment herein rendered a rehearing is refused.